**SO ORDERED.**

**SIGNED this 2nd day of August, 2021.**



Dale L. Somers
United States Chief Bankruptcy Judge

Designated for online use but not print publication
**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| In re: | |
| Seth T. Miller<br>Kindrah D. Miller, | Case No. 20-11486-7 |
| Debtors. | |
| InterBank, | |
| Plaintiff, | Adversary No. 21-5005 |
| v. | |
| Seth T. Miller and<br>Kindrah D. Miller, | |
| Defendants. | |

**Memorandum Opinion and Order Granting in Part and Denying in
Part Motion to Dismiss**

Plaintiff InterBank alleges Debtors/Defendants Seth and Kindrah

Miller obtained an extension of credit through false pretenses, and then sold, secreted, absconded, failed to deliver, and converted certain personal property collateral. Plaintiff seeks the nondischargeability of the debt allegedly owed to it under 11 U.S.C. § 523(a)(2)(A) (the "extension, renewal, or refinancing of credit" obtained by "false pretenses, a false representation, or actual fraud") and § 523(a)(6) ("willful and malicious injury by the debtor to . . . the property of another entity").[1] Debtors filed a motion to dismiss the complaint, generally arguing Plaintiff did not allege intent to defraud or willful and malicious injury, but merely breaches of contract.

The Court has assessed the allegations made by Plaintiff compared to the elements required to be shown for each claim and concludes that Plaintiff has stated causes of action under both § 523(a)(2)(A) and § 523(a)(6) regarding the debt reflected in its Proof of Claim No. 3, but not as to the debt reflected in Proof of Claim No. 2. The Court therefore grants in part and denies in part Debtors' motion to dismiss the complaint filed against them.[2]

## I.    Factual and Procedural Background

Plaintiff's complaint alleges the following facts. Debtors operated a

---

[1]  All future references to title 11 of the United States Code will be to section number only.

[2]  Doc. 15. Plaintiff appears by Nicholas Grillot. Debtors appear by Martin Peck.

2

roofing and gutter company in Lone Wolf, Oklahoma. Plaintiff is an

Oklahoma bank, and provided financing to Debtors for use in the operation of

that company. The parties' lending relationship began in 2014, and continued

through 2019, as set out herein:

- Promissory note no. 0760, entered October 6, 2014 with Seth Miller only, for $34,655.26. Secured by a mortgage from both Debtors, executed the same date, on 605 Day Avenue, Lone Wolf, Oklahoma. Mortgage recorded October 14, 2014.
- Promissory note no. 2457, entered October 14, 2015 with both Debtors, for $33,530.
- Promissory note no. 6359, entered March 14, 2016 with both Debtors, for $38,622.54.
- Promissory note no. 1015, entered February 3, 2017 with both Debtors, for $66,073.17. This loan both extended additional credit and consolidated the balances owed on note nos. 2457 and 6359.
- Promissory note no. 7066, entered in September 2017 with both Debtors, for $29,967.72.
- Promissory note no. 0260, entered December 8, 2017 with both Debtors, for $23,091. This loan was renewed on July 30, 2018, for $19,814.21.
- Promissory note no. 4472, entered February 28, 2018 with both Debtors, for $15,060.
- Promissory note no. 3477, entered November 18, 2018 with both Debtors, for $26,737.08. This loan consolidated the balances remaining of note nos. 7066 and 4472.

The above financing included a line of credit to pay for business expenses,

financing for the purchase of equipment and machinery, and financing to

purchase vehicles.

Debtors granted security interests in all of their personal property

assets and in specific vehicles. The security agreements were signed

February 3, 2017, July 30, 2018, and November 9, 2018. Plaintiff was granted the right of annual inspection of collateral by the security agreements, and Plaintiff contends that it routinely exercised its right to do so. The above agreements also required Debtors to notify Plaintiff if they sold any of the collateral and if there was any change in the location of any collateral.

On January 19, 2019, Plaintiff completed an annual inspection of machinery, equipment, and vehicles. Plaintiff prepared a report of its collateral, and Seth Miller signed that report as "Owner." The report lists fifty-two items, with a total value of machinery and equipment of $186,450. About seven months later, on August 28, 2019, and again on September 27, 2019, Debtors executed additional promissory notes and security agreements with Plaintiff. The security agreements again gave Plaintiff security interests in all Debtors' inventory, machinery, equipment, and specific vehicles.

In December 2019, Debtors refinanced their obligations with Plaintiff. On December 16, 2019, Debtors entered into promissory note no. 9564, in the original principal amount of $101,405.41 to consolidate some of their prior outstanding loans and to provide an additional $35,000 in capital for Debtors' use on business expenses. This loan, like the prior loans, allowed Plaintiff to inspect its collateral on an annual basis. The security agreement for this loan, signed the same date, gave Plaintiff a mortgage on the real property in

4

Lone Wolf, Oklahoma. The security agreement also gave Plaintiff a security interest in inventory, accounts, a 2016 Dodge Ram Mega Cab pickup, a 2007 Dodge SQ3 CW, and a 2010 Ford F250 pickup.

Also on December 16, 2019, Debtors entered into promissory note no. 9498, in the principal amount of $56,278.30. This loan also consolidated several prior loans and allowed Plaintiff to inspect collateral on an annual basis. A security agreement was also entered for this loan on the same date, apparently cross-collateralizing the notes, granting a mortgage in the Lone Wolf, Oklahoma real property, and granting a security interest in accounts, rights to payment, general intangibles, equipment, the 2016 Dodge Ram Mega Cab pickup, the 2007 Dodge SQ3 CW, and the 2010 Ford F250 pickup.

The mortgages for both the December 16, 2019 loans were recorded the next day. The security interests in the vehicles were perfected by notations of the liens on the titles, and other security interests were perfected with UCC-1 financing statements filed with the Oklahoma County Clerk.

Both of the December 16, 2019 security agreements required Debtors to keep Plaintiff's collateral in their possession and keep the collateral at the address included in the security agreement. Debtors were also required to notify Plaintiff in writing of any change in location of the collateral and obtain written consent from Plaintiff to a proposed change in location. The

5

security agreements also prohibited Debtors from selling any of the collateral without first obtaining Plaintiff's written consent, unless it was the sale of inventory in the ordinary course of Debtors' business.

About two months later, on February 28, 2020, Plaintiff completed its annual inspection of Debtors' equipment, machinery, and vehicles. During this inspection, Plaintiff discovered some its collateral had been taken out of state without written permission, that some of the collateral was being stored at Seth Miller's brother's property, and that some of the collateral was missing. Debtors never informed Plaintiff that they had sold or moved out of state any of the collateral identified in the January 2019 inspection report.

Based on the sale and movement of the collateral, Plaintiff considered Debtors in default of the December 2019 notes refinancing their loan obligations. Debtors also defaulted on their payment obligations, although a date of payment default or details about that default are not given. About ten days after the February 28, 2020 annual inspection, on March 9, 2020, Plaintiff gave Debtors notice of the default, demanded cure within ten days, and demanded Debtors provide Plaintiff with information on the sale and location of the collateral.

Debtors did not cure the defaults, and Plaintiff initiated legal action in Oklahoma to foreclose on its mortgages and security interests. Plaintiff also

6

began to repossess the personal property collateral subject to its security interests.

Debtors currently live in Goodland, Kansas. In May 2020, Plaintiff filed suit against Debtors in Sherman County, Kansas. Plaintiff obtained an order of immediate possession, requiring Debtors to give Plaintiff possession of all collateral in Kansas in their possession and control. Plaintiff then repossessed "several" vehicles, although two were severely damaged and missing the flatbeds which were accessions to those vehicles. Plaintiff also repossessed three pieces of equipment. Plaintiff sold the repossessed collateral and applied the proceeds of the sales to Debtor's loan balances.

Plaintiff alleges there is machinery, equipment, and vehicles it was unable to repossess because Debtors either sold the property, failed to deliver the property, or Plaintiff cannot locate the property. Plaintiff attached an exhibit to the complaint of the alleged missing property, which includes forty-seven items, valued at $114,900. Plaintiff alleges Debtors owe $31,620.78 under the original 2014 loan, "primarily" secured by a mortgage against the real property in Oklahoma. Plaintiff alleges Debtors owe $132,621.31 under the December 2019 refinancing, "primarily" secured by personal property.

Debtors filed a Chapter 7 bankruptcy petition on December 8, 2020. In that petition, Debtors disclosed a business loan and business line of credit

7

with Plaintiff totaling $134,080.48 and indicated a portion was secured by the Oklahoma real estate and a portion was unsecured. Debtors indicated an intent to surrender the Oklahoma real property to Plaintiff. Shortly after Debtors' filing, Plaintiff filed two proofs of claims in Debtors' bankruptcy case and a motion for relief from stay. An Order was entered permitting Plaintiff to "foreclose upon and obtain possession of" both the real property and personal property.[3]

Plaintiff's Proof of Claim No. 2 is for $31,620.78, secured by the mortgage on the real estate and "Equipment, inventory and general intangibles," supported by promissory note no. 0760. This is the loan entered October 6, 2014 and is the amount that was due the date the case was filed on December 8, 2020.[4] Claim No. 3 is for $132,621.31, secured by the mortgage on the real estate and "Equipment, inventory and general intangibles," supported by promissory note no. 9498 and promissory note no. 9564, i.e., the December 2019 refinancing loans.

---

[3] Case No. 20-11486, Doc. 22 p. 5.

[4] There is a pleading attached to Proof of Claim No. 2, however, that indicates a sheriff's sale was conducted of the real property on December 1, 2020, garnering $32,001. The motion for relief from stay filed by Plaintiff indicates confirmation of the sale was stayed due to the bankruptcy filing and the sale proceeds were being held by the clerk of the Kansas state court case. Case No. 20-11486, Doc. 12. As indicated above, stay relief was granted, and presumably the proceeds have been applied to Debtors' loans. No amended claims have been filed, however.

Plaintiff then filed an adversary proceeding against Debtors, asking that both Claims No. 2 and No. 3 against Debtors be excluded from discharge[5] under § 523(a)(2)(A) and § 523(a)(6). Debtors did not answer the complaint; they responded with a motion to dismiss all counts, arguing Plaintiff failed to state claims under either § 523(a)(2)(A) or § 523(a)(6).

## II.  Analysis

## A.  Governing Standards of Law.

Adversary proceedings concerning "the dischargeability of particular debts" are core proceedings under 28 U.S.C. § 157(b)(2)(I), over which this Court may exercise subject matter jurisdiction.[6]

Federal Rule of Bankruptcy Procedure 7012(b) incorporates Federal Rule of Civil Procedure 12(b) into all adversary proceedings, and Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To determine whether a claim has been stated under Rule 12(b)(6), "a complaint must contain sufficient factual matter,

---

[5] Doc. 1 p. 11 ¶¶ 51-54.

[6] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1, *printed in* D. Kan. Rules of Practice and Procedure (March 2018).

9

accepted as true, to 'state a claim to relief that is plausible on its face.'"[7] A claim is facially plausible if the factual content plead, as opposed to legal conclusions made, allow a court to draw the reasonable inference that the stated claim is present.[8]

Debtors argue that Plaintiff's claims have fraud as a central element. Under Federal Rule of Civil Procedure 9(b),[9] "a party must state with particularity the circumstances constituting fraud" in a complaint. "Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud."[10] A complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[11]

## B. Nondischargeability under § 523(a)(2)(A).

As pertinent here, § 523(a)(2)(A) prohibits discharge of debts stemming

---

[7] *Williams v. Meyer (In re Williams)*, 438 B.R. 679, 683 (10th Cir. BAP 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[8] *Id.* (internal quotations omitted); *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

[9] Rule 9(b) is made applicable to bankruptcy via Federal Rule of Bankruptcy Procedure 7009.

[10] *United States ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

[11] *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotation omitted).

10

from the "extension, renewal, or refinancing of credit, to the extent obtained by-- -- (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" Count 1 of Plaintiff's complaint alleges nondischargeability under § 523(a)(2)(A) based on extension of credit under false pretenses and false misrepresentations.

Plaintiff argues Debtors had a duty, under the terms of their loans and security agreements, to inform Plaintiff about the status of collateral, that Debtors failed to do so, and Debtors "knowingly and intentionally failed to inform [Plaintiff] that they had sold or were no longer in possession of the Personal Property in order to induce [Plaintiff] to agree to the December 2019 Refinance."[12] Plaintiff claims it "reasonably relied on its January 2019 Inspection Report and [Debtors'] duty to inform [Plaintiff] that they had sold or were no longer in possession of the Personal Property in agreeing to the December 2019 Refinance, including extending additional credit" and in not declaring Debtors in default.[13] Plaintiff claims its damages are the additional capital extended and the delayed declaration of default, thereby causing it to fail to exercise its right to obtain possession of the collateral.[14]

---

[12] Doc. 1 p. 14 ¶ 68.

[13] *Id.* ¶ 69.

[14] Plaintiff quantifies the damages at $164,242.09, the sum of Proofs of Claim

11

The analysis under § 523(a)(2)(A) begins "with the recognition that exceptions to discharge are narrowly construed, and because of the fresh start objectives of bankruptcy, doubt as to the meaning and breadth of a statutory exception is to be resolved in the debtor's favor."[15] A party seeking to except a debt from discharge bears the burden of proving each element by a preponderance of evidence.[16]

Plaintiff's nondischargeability claim is based on a failure to inform, also referred to as "fraud by silence"[17] and falling within § 523(a)(2)(A) as false pretenses. "Unlike false representations, which are express misrepresentations, false pretenses include conduct and material omissions."[18] "A debtor must disclose facts he knows may justifiably induce the other party to act with respect to the transaction to be consummated."[19]

---

No. 2 and No. 3.

[15] *DSC Nat'l Properties, LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 168 (10th Cir. BAP 2012) (internal quotations and alterations omitted).

[16] *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Knaub v. Rollison (In re Rollison)*, No. CO-13-028, 2013 WL 5797861, at *3 (10th Cir. BAP Oct. 29, 2013) (burden of proof, by a preponderance of the evidence).

[17] *In re Lyons*, 454 B.R. 174, 177 (Bankr. D. Kan. 2011) ("Fraud by silence may constitute false pretenses under § 523(a)(2)(A).").

[18] *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215, 223 (10th Cir. BAP 2013). As noted, a debtor's failure to disclose must involve material facts. *See Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1374 (10th Cir. 1996) ("failure to disclose such information constitutes a 'false representation' or 'false pretenses' under § 523(a)(2)(A)").

[19] *Gross v. Osborne (In re Osborne)*, 520 B.R. 861, 869-70 (Bankr. D.N.M. 2014) (internal quotations omitted).

12

False pretenses under § 523(a)(2)(A) are "defined as any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongfully induced to extend money or property to the debtor."[20] "To establish an exception to discharge for false representations or pretenses, the creditor must prove: 1) the debtor knowingly made false representations or misleading omissions, 2) knowledge of falsity; 3) intent to defraud; 4) justifiable reliance; and 5) resulting damage."[21]

Debtors' motion to dismiss primarily argues the third element (intent to defraud) has not been shown. A debtor's intent to deceive "'may be inferred from the totality of the circumstances.'"[22] "The bankruptcy court must consider whether the totality of the circumstances 'presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the

---

[20] *Id.* (internal quotation omitted)

[21] *Cherry v. Neuschafer (In re Neuschafer)*, Nos. KS-13-030, KS-13-035, 2014 WL 2611258 (10th Cir. BAP 2014). Regardless of whether the Court characterizes Plaintiff's claim as falling under false pretenses or actual fraud, intent to defraud is a required element. "Actual fraud occurs when a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right. Thus, it requires proof of three elements: 1) fraudulent intent; 2) a fraudulent scheme; and 3) injury caused by the scheme." *Id.* at *5 (internal quotations omitted); *see also Husky Int'l Elects., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016) ((actual fraud is "any fraud that involves moral turpitude or intentional wrong" and "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud'") (internal quotation marks and alteration omitted).

[22] *In re Young*, 91 F.3d 1367, 1375 (10th Cir. 1996).

13

creditor.'"[23] "The Tenth Circuit construes § 523(a)(2)(A) narrowly to limit the harsh result of nondischargeability to frauds involving moral turpitude or intentional wrong."[24]

Regarding Plaintiff's Proof of Claim No. 2 (Plaintiff's first proof of claim), there are no allegations at all that could support a finding that Debtors intended to defraud Plaintiff with respect to the transaction underlying that claim. Plaintiff's complaint only mentions the 2014 loan in its recitation of the factual history of the parties' lending relationship, but otherwise does not attempt to put forth facts that could establish an inference of an intent to defraud in 2014. Debtors' motion to dismiss the complaint as to the nondischargeability of Proof of Claim No. 2 under § 523(a)(2)(A) is granted.

There are, however sufficient allegations to present a picture of deceptive conduct regarding Plaintiff's Proof of Claim No. 3 (Plaintiff's second proof of claim). Plaintiff completed its annual inspection in January 2019. Seven months later, on August 28, 2019, and again on September 27, 2019, Debtors executed additional promissory notes and security agreements with Plaintiff. Debtors then refinanced their loan obligations in December 2019. In

---

[23] *In re Davis*, 246 B.R. at 652 (quoting 3 Norton Bankr. Law & Practice 3d § 57:16 (2016)).
[24] *In re Osborne*, 520 B.R. at 869.

14

other words, Debtors participated in an inspection of the collateral in January 2019, and over the course of the year, engaged with Plaintiff three additional times, each time pledging to protect the collateral supporting the loans for Plaintiff. And Debtors had been subject to annual inspections for years, so inspection of the personal property was not new or unusual.

Yet two months thereafter, in February 2020, when Plaintiff completed another annual inspection, much of the collateral was missing. Debtors allege Plaintiff has pled no more than a basic breach of contract.[25] But from the parties' lending relationship detailed above, it is evident not only that Debtors regularly interacted with Plaintiff, but at minimum, that they also were regularly presented with, signed and committed to, terms of their credit with Plaintiff. In other words, this is not a case where a debtor entered into a lending arrangement long in the past and could have understandably forgotten certain terms or requirements of that note. Debtors regularly signed and committed to terms offered to them by Plaintiff. From the totality of the circumstances alleged here, deceptive conduct indicating an intent to

---

[25] *See, e.g.,* *Daniels v. Clark (In re Clark)*, No. 00-1234, 2002 WL 1821600, at *4 (10th Cir. BAP Aug. 2, 2002) ("[A] debtor's promise or statement regarding his future intention may constitute a false representation under Section 523(a)(2)(A) if the debtor has no present intention of performing it. On the other hand, if a debtor intends to perform at the time he makes a promise, but subsequently changes his mind or fails to perform, then the initial representation will not be actionable for fraud.").

defraud at the time Debtors engaged in the December 2019 refinancing of their loans could be found. At this point in the proceedings, this is sufficient.

Debtors also argue Plaintiff failed to allege that the damages incurred were in reliance on alleged false pretenses. Regarding a creditor's reliance, "[t]he appropriate standard is not 'reasonableness' in the sense of whether an objectively reasonable person would have relied upon the debtor's false representation," but "whether the actual creditor's reliance was 'justifiable' from a subjective standpoint."[26] To determine whether reliance is justifiable, a court should "examine the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case."[27]

Debtors argument is that it is not clear from the complaint how much new money was advanced in the 2019 refinancing, or how specifically the alleged false pretenses damaged Plaintiff. Plaintiff contends that the entire amount it is owed is traceable to Debtors' non-disclosures in December 2019, because the December 2019 refinance provided additional capital but also changed the terms of the underlying agreements that were refinanced.

The Court concludes that Plaintiff has alleged sufficient facts concerning its reliance and damages. The *amount* of damages will be subject

---

[26] *In re Osborne*, 520 B.R. at 869-70 (internal quotations omitted).
[27] *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 792 (10th Cir. 2009).

to further factual development, but the *fact* that damages were incurred in reliance on the alleged false pretenses is sufficiently pled. The Court concludes that Plaintiff has alleged enough to survive a motion to dismiss the nondischargeability complaint with respect to Proof of Claim No. 3.

## C.  Nondischargeability under § 523(a)(6).

Subsection 523(a)(6) of title 11, the basis for Plaintiff's second and third nondischargeability claims, provides as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt– –
. . .
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

Subsection 523(a)(6) only applies to "acts done with the actual intent to cause injury."[28] The injury must be both willful and malicious.[29] Destruction of property and conversion of property can form the basis of a nondischargeability complaint under § 523(a)(6).[30] Under § 523(a)(6), a debtor

---

[28]  *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

[29]  *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 911 (10th Cir. BAP 2020) ("This Court concludes that proof of a 'willful and malicious injury' under § 523(a)(6) requires proof of two distinct elements — the injury must be both 'willful' and 'malicious.' Analyzing and applying 'willful' and 'malicious' separately is the better approach.").

[30]  *See, e.g.*, *McIntyre v. Kavanaugh*, 242 U.S. 138, 141 (1916) (concluding that debt was nondischargeable when a broker deprived a customer of his property by deliberately disposing of it); *In re Longley*, 235 B.R. 651, 657 (10th Cir. BAP 1999) ("conversion can, under certain circumstances, give rise to a non-dischargeable debt pursuant to § 523(a)(6)"); *State Farm Fire & Cas. Co. v. Edie (In re Edie)*, 314 B.R.

"must intend the consequences of his actions, not just the actions themselves."[31] Plaintiff, as the creditor pursuing nondischargeability, also has the burden of proof under § 523(a)(6).[32]

An injury is willful when there is "a deliberate or intentional injury, not merely 'a deliberate or intentional act that leads to injury.'"[33] A willful injury can either be established by "direct evidence that the debtor acted with the specific intent to harm a creditor or the creditor's property, or by indirect evidence that the debtor desired to cause the injury or believed the injury was substantially certain to occur. This is a subjective standard."[34]

An injury is malicious if the debtor's actions are wrongful.[35] As the Tenth Circuit BAP recently noted:

> For an injury to be "malicious," evidence of the debtor's motives, including any claimed justification or excuse, must be examined to determine whether the requisite 'malice' in addition to 'willfulness' is present. All the surrounding circumstances, including any justification or excuse offered by the debtor, are relevant to determine whether the debtor acted with a culpable state of mind vis-a-vis the actual injury caused the creditor. A willful and malicious injury requires more than negligence or recklessness.[36]

---

6, 17 (Bankr. D. Utah 2004) (concluding that where the defendant intended to cause injury to property by fire, then willful and malicious intent to injure is proven under § 523(a)(6)).

[31] *Melquiades v. Hill (In re Hill)*, 390 B.R. 407, 411 (10th Cir. BAP 2008).

[32] *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

[33] *In re Smith*, 618 B.R. at 912 (quoting *Kawaauhau*, 523 U.S. at 57).

[34] *Id.* (internal citations omitted).

[35] *Id.* at 919.

[36] *Id.* (internal citations and quotations omitted).

18

The "totality of circumstances must be examined to determine if a wrongful state of mind was present" when the debtor caused the alleged injury to the creditor.[37]

Count 2 of Plaintiff's complaint alleges nondischargeability under § 523(a)(6) based on willful and malicious harm to Plaintiff's security interest in its collateral. Plaintiff alleges it had, and Debtors knew it had, a perfected security interest in the personal property collateral, but Debtors "knowingly secreted and/or absconded" the personal property and "failed to deliver" the property under the order for immediate possession issued in the Kansas case.[38] Plaintiff also alleges Debtors knew that selling property and not remitting proceeds to Plaintiff and "secreting and absconding" with the property "would cause" or be "substantially likely to cause injury" to Plaintiff.[39] Plaintiff then alleges that Debtor Seth Miller "sold, secreted, and absconded" with property valued at $114,900.[40]

Count 3 of the complaint also alleges nondischargeability under § 523(a)(6), this time based on conversion of Plaintiff's security interest in the proceeds of multiple items of the personal property collateral. Plaintiff alleges

---

[37] *Id.* at 920.
[38] Doc. 1 p. 16 ¶ 78.
[39] *Id.* ¶ 79-80.
[40] *Id.* ¶ 81.

19

Debtors "liquidated" items of personal property valued at $60,000.[41] Plaintiff claims Debtors knew the proceeds of the liquidated assets were subject to a perfected security interest and agreed not to sell the collateral without prior written consent. Plaintiff alleges that at some point between the January 2019 property inspection and the February 2020 inspection, Debtors sold or transferred the property without informing Plaintiff of the conveyance and without obtaining prior written consent. Plaintiff alleges Debtors did not deliver the proceeds from the sale and instead used the proceeds for their personal benefit.

First, as above, Plaintiff makes almost no mention of Proof of Claim No. 2 or the 2014 loan as to its claims under § 523(a)(6), and all allegations concern activity surrounding the 2019 refinancing or Debtors' behavior in 2019. As above, Plaintiff has failed to state a claim under § 523(a)(6) regarding Proof of Claim No. 2.

Regarding Proof of Claim No. 3, Debtors argue most of the allegations under § 523(a)(6) are that collateral is sold, undelivered, or simply missing,

---

[41] The items are: a "2015 Perkins 10KW Diesel Generator," a "Speeflo 8900 Airless Sprayer," a "1998 Ingersoll Rand 185P Diesel Air Compressor with JD Engine (VIN 9239)," a "2016 Cargo Mate Utility Trailer (VIN 7139)," two "Sull-Air 185 Air Compressor[s] with John Deere Engine," a "2018 Graco 899 Airless with Honda Motor" and a "2018 Sundowner Aluminum Gooseneck Trailer (VIN 2443)." *Id.* p. 17 ¶ 84.

20

and this alone cannot fulfill the willful and malicious standard without some allegation that collateral was intentionally destroyed.

Plaintiff's allegations are not robust. That said, Plaintiff alleges intentional actions, done with the purpose of harming Plaintiff, for Debtors' personal gain. Plaintiff alleges Debtors secreted and absconded personal property and failed to deliver personal property, knowing that doing so would cause or was substantially certain to cause injury to Plaintiff. Plaintiff also alleges Debtors sold or transferred property for their personal gain at the expense of Plaintiff, knowing that doing so was contrary to their agreements. If Plaintiff's complaint discussed a single piece of property sold over a year, very little could be inferred therefrom. But Plaintiff alleges Debtors sold seven pieces of collateral over the course of a year, and that forty-seven pieces of personal property are simply missing from that same time frame.

Plaintiff diligently completed yearly inspections, and Debtors had regularly signed loan documents. Again, this was not the case of a long-ago provision from a distantly signed contract that a party could have simply forgotten about. The disposal of fifty-four pieces of property, which Debtors had contemporaneously offered as collateral for a refinance of their debt, is enough to create an inference of willful and malicious injury. At the pleading stage, a plaintiff must state a claim to relief that is plausible on its face. It is

plausible based on the facts alleged that a fact-finder could draw a reasonable inference that the stated claims are present.

## III. Conclusion

It is early in Plaintiff's case. At this point, the Court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. All well-pleaded factual allegations in a complaint are accepted as true and viewed in the light most favorable to the nonmoving party."[42] Under this standard, Plaintiff has alleged just enough to defeat the motion to dismiss as to its Proof of Claim No. 3, but not as to Proof of Claim No. 2.

Plaintiff's complaint against Debtors meets the pleading requirements of Rule 12(b)(6) for the claims brought under §§ 523(a)(2) and 523(a)(6) as to the nondischargeability of Proof of Claim No. 3. The motion to dismiss those claims against Debtors is denied. The motion to dismiss is granted as to claims of nondischargeability of Proof of Claim No. 2.

**It is so Ordered**.

# # #

---

[42] *In re Expert South Tulsa, LLC*, 522 B.R. 634, 651 (10th Cir. BAP 2014) (internal quotations omitted).

22